O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ANTHONY BRACKEN, et al (PRUDHOLME),<br><br>    Defendants. | Case № 2:13-cr-00822-ODW-25<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS DUE TO INSTITUTIONAL BIAS; REQUEST FOR DISCOVERY;  REQUEST FOR EVIDENTIARY HEARING [1035] AND APPLICATION FOR OSC [1070]** |

## I.    INTRODUCTION

Defendant Prudholme is one of 38 defendants indicted for his participation in a scheme by members and associates of the Grape Street Crips to manufacture and distribute phencyclidine or PCP.  The First Superseding Indictment was made public February 12, 2014. [71]   Since that time the parties have entered into multiple

stipulations to exclude time under the Speedy Trial Act, (18 U.S.C §§3161(h)(7)(A),(h)(7)(B)(i), (h)(7)(B)(ii), and (h)(7)(B)(vi),  and the Court has issued orders repeatedly continuing the trial date, now set for February 14, 2017. [1066.]

The government has either provided or made available to the defense attorneys approximately 60 gigabytes of discovery, including approximately 1,000 pages of wiretap applications and orders, approximately 6,000 pages of investigatory reports and photographs, approximately 77,000 audio/visual files (i.e. wiretap intercepts and body recordings), and approximately 11,200 pages of draft transcripts and line sheets associated with those recordings. (See Stip.to Cont. Trial. P.4, DE-1066).

To date, ten (10) defendants have entered into plea agreements with the government and have  been sentenced.

On June 30, 2016 counsel for Defendant Prudholme filed the instant motion for dismissal of this action on the basis of alleged institutional bias, a request for discovery of documents pertaining to the administration of the CJA panel and a request for an evidentiary hearing. [1035, 1042] More recently, counsel for Prudholme has filed an OSC directed to the CJA Committee of the Central District as to why the completion of certain forms shouldn't be enjoined and to enjoin further "interference with defense counsel's CJA work."  [DE1070]  On July 18, 2016 the

government filed an opposition to that motion [1051]  A reply to the government's opposition was filed August 1, 2016  [1062].  The matter, now fully briefed, is ready for consideration.  The Court does not believe it would benefit from oral argument.

## II.   DISCUSSION

First the Court would note its unqualified rejection of Defendant's premise that there exists an institutional bias.  To say that the judges of the federal courts, or merely the Central District of California, are incapable of discharging their constitutional duties fairly and impartially is unfounded, insulting and patently false.  The charge is that there is disparate treatment shown toward defendants according to whether the defendant's lawyer is privately retained, appointed or is a government lawyer, is a most scurrilous charge.  It is also a charge for which Defendant has supplied but a single argument upon which the assertion of bias is based.  Specifically, Defendant contends that the judiciary is motivated to reduce defense cost because, presumably, any savings are passed on to the judiciary.  Specifically, Prudholme asserts, "[t]he defense function is currently reduced to a budget line item among competing court expenditures such as judiciary salaries and expenses. *See* Exhibit I at 8 [to motion papers.] . . .The problem with the tension inherent in this budgetary relationship is that the Judiciary are driven by the goal of cost-containment at the expense of the defense function." (Motion at p.16),   The

assertion is flatly false.  The judiciary, neither as an institution nor individually, has any self-interest in reducing defense costs.  The judiciary's compensation is not diminished by reason of amounts paid in defense costs, or for any other reason. "The judges, both of the supreme and inferior Courts, shall . . . at stated Times, receive for their Services, a Compensation, which shall not be diminished during their continuance in Office." (See Art. III, sect. I.)  Likewise, those salaries are not enhanced by any savings of defense costs.

Conversely, when counsel are compensated according to the number of hours they bill, an argument could be made that some might be motivated to bill for work not done or to overbill for work done, which can unfairly diminish the funds appropriated for the nation's defense function.  If there is an example of where unfettered defense spending might accrue directly to the benefit of someone, it most certainly isn't the judiciary.  Moreover, any comparison with the USAO and the FPD's office isn't terribly valid given those attorneys are salaried and not compensated according to the number of hours they bill. The claim of institutional bias because every dollar saved is a dollar that accrues to the bench is flatly false and to the extent Defendant's motion is predicated upon this false premise, it is rejected.

///

### A. Taken to Its Logical Conclusion, The Remedy Sought Would Lead To Absurd Results

In examining the motion, a number of questions occur: for example, it is a little unclear whether this motion to dismiss is applicable to all defendants represented by CJA panel counsel or just Defendant Prudholme. Logic and consistency would argue that Prudholme's sought for remedy would be applicable to all defendants represented by CJA panel counsel, across all cases. Because of the vital importance of counsel's assistance, the Supreme Court has held that, with certain exceptions, a person accused of a federal or state crime has the right to have counsel appointed if retained counsel cannot be obtained. See *Argersinger v. Hamlin*, 407 U.S. 25 (1972). At arraignment the scenario would necessarily be: An indigent defendant appears for arraignment and if he or she cannot afford to retain counsel, and the federal public defender is conflicted out the court will appoint panel counsel. Because the CJA panel counsels' compensation structure is, so the argument goes, inherently skewed against the defendant so that legally adequate representation is impossible, the court would be required to dismiss that defendant. The obvious absurdity of this proposal is clear.

### B. There Does Not Appear to be An Actual Case or Controversy Here

The court is at a loss to see how this motion relates to this case much less this defendant. Nowhere in the motion is Defendant Prudholme mentioned. There is also

no mention of any request by this defendant's counsel for investigators, experts, paralegal help, travel or legal assistance. Likewise, there is no indication that any such request was made and denied or consent withheld. Nothing in the motion asserts that counsel has been unable to or prohibited, by anything done in this case, from preparing an appropriate defense for her client other than the general assertion of some sort of chilling effect simply by virtue of the fact that mechanisms are in place to prevent waste.

As for the claim that the court's monitoring of defense counsel's vouchers negatively impacts the public's perception of the fairness of the process, this is simply a bald unsupported assertion. Unless panel counsel are taking their complaints to the streets,  I dare say the public is not aware of the practice nor would it particularly care, other than to be comforted that someone is watching how their money is being spent.

In the end, this is nothing more than a generalized disagreement with how the CJA panel is selected and compensated and how expenditures under the CJA are managed with the goal of minimizing waste. These generalized objections, however, are insufficient to confer Article III standing. For example, in *Warth v. Seldin*, 422 U.S. 490 (1975) an action was brought against a town claiming that the town's zoning ordinance, by its terms and as enforced, effectively excluded persons of low and

moderate income from living in the town, in violation of petitioners' constitutional rights.

In rejecting the challenge to the ordinance, the High Court stated: "We hold only that a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of 'a real need to exercise the power of judicial review' or that relief can be framed 'no (broader) than required by the precise facts to which the court's ruling would be applied.'" *Id.* at 499. "A federal court's jurisdiction [ ] can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .' *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 (1973)."

Here, there is no claim that Mr. Prudholme has been injured by virtue of the fact that CJA panel counsel must adhere to a protocol in order to have their legal fees and costs paid out of CJA funds. Therefore there is no standing for him to insist on the relief sought here.

### C. To the Extent Counsel Is Stating That She Cannot Provide Her Client With A Defense At the Level Demanded Under the Constitution, The Court is Empowered to Grant Relief

The Court must assure that criminal defendants receive a fair trial. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Pursuant to 18 U.S.C §3006A(a) the Court appointed counsel to represent Mr. Prudholme. Said representation includes not only "counsel, but investigative, expert and other services necessary for adequate representation." *Id*.

This Court having made said appointment is now informed by appointed counsel that the protocols in place for the orderly, efficient and economical administration of the CJA defense program have a "chilling effect" on her ability to mount a defense on behalf of her client. That is a matter of grave concern to the court.

So as to assure that Defendant Prudholme has an attorney motivated and able to provide a vigorous and effective defense, the Court sets a hearing where counsel will show cause why she is able or not, to discharge her assignment as defense counsel for Mr. Prudholme. If it remains counsel's position that as long as the CJA procedures remain in place that she will not have adequate time to devote to Mr. Prudholme's defense, then the court will appoint new counsel.

Said hearing will take place on **Monday August 29, 2016 at 11:00** am in Courtroom 11.

### III. CONCLUSION

For the foregoing reasons, the request for dismissal is denied. The Court finds there is no standing for Mr. Prudholme to bring this motion, having alleged to injury from the complained of CJA policies and procedures. For that reason, the request for an evidentiary hearing, discovery and an injunction against the CJA Committee of the Central District's continued requirements of the submission of its various forms by panel counsel are also denied.

**IT IS SO ORDERED.**

August 12, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**